[Civ. No. 169.    Third Appellate District.—February 8, 1906.]

AH GETT, Respondent, v. MARY E. CARR et al., Appellants.

APPEAL—EVIDENCE—VERDICT.—The appellate court, in considering the sufficiency of the evidence to sustain a verdict, will indulge every intendment in support of the verdict by assuming the truth of evidence tending to support it.

ID.—NONPAYMENT.—The evidence reviewed and held sufficient to sustain a finding of nonpayment of the accounts stated sued on.

APPEAL from a judgment of the Superior Court of Trinity County, and from an order refusing a new trial. J. W. Bartlett, Judge.

The facts are stated in the opinion of the court.

William C. Bissell, for Appellants.

D. J. Hall, and H. R. Given, for Respondent.

McLAUGHLIN, J.—The defendants prosecute this appeal from a judgment against them and from the order denying their motion for a new trial. The action is based on two accounts stated. One of these accounts was stated with plain-

tiff and the other with one Ah Teet, for whom plaintiff acted in making the settlements hereinafter referred to. The statement of the accounts was admitted, and the principal question presented involves the sufficiency of the evidence to sustain the verdict on the issue of payment. The evidence was conflicting, and in stating the substance thereof we will, as in duty bound under well-settled rules, indulge every intendment in support of the verdict by assuming the truth of evidence tending to support it.

The testimony of plaintiff shows that he had been working in the mine owned by defendants for many years and had made repeated settlements with them. Up to the time of the settlement out of which this controversy arose, he had never given nor been requested to give a receipt. All previous settlements had been made at his cabin near the mine. He and his assignor, one Ah Teet, had been working in the mine for some time, and plaintiff, acting for both, as he, admittedly, had authority to do, was insisting on a settlement. Contrary to the unvarying custom which had been followed for years, he was told to bring his book to the Carr house, where the settlement would be made. When he reached the house the defendant, Mary E. Carr, her son Charles and nephew Homer Robbins were there. As he went in Robbins left the house for the ostensible purpose of filing some saws. Mrs. Carr remained in her bedroom, and plaintiff and Charles Carr were seated near a table in the dining-room. A settlement of both accounts was reached, and the amount due to each of the Chinamen agreed upon. The plaintiff was then requested to sign receipts, which were written in a memorandum book carried by Charles Carr. The request was unusual, but plaintiff signed both receipts. Immediately after this was done Charles Carr left the house and remained outside for a while. Upon his return he procured a sack of coin from his mother and counted out the two sums previously agreed upon, at the same time saying to plaintiff: "That is your money." Thereupon, and before plaintiff had touched the money which was lying on the table, a masked robber with a pistol appeared in the doorway and said it was his money. The plaintiff attempted to escape from the house, but was kicked back by the intruder, whereupon he sought refuge in Mrs. Carr's bedroom. During his stay in the bedroom he heard two

shots outside of the house. When the plaintiff came back into the dining-room he asked for his money, but was told that the robber had taken it, and asked what he was going to do about it. The equanimity displayed under conditions calculated to create great excitement was remarkable. There was no commotion other than that made by the Chinaman, who was up on a bed endeavoring to make his escape through a window. A gun was hanging in the corner of the dining-room, but Charles Carr made no attempt to use it or pursue the robber. The shots outside apparently created no apprehension for the safety of Robbins in the mind of either aunt or cousin. Mrs. Carr remained in her bedroom, Charles stayed in the house, while Robbins says he was filing saws in the blacksmith shop, and paid no attention to the shots which he heard up near the house. Two dogs, usually clamorous when strangers appeared, made no noise, and the serenity of none save plaintiff was seriously disturbed. After the lapse of several minutes Charles Carr rang a bell, and Robbins, thinking he had received a belated summons to the dinner which his aunt had no apparent intention of preparing, came up to the house. There is some evidence to show that the custom obtaining in that household did not include a midday meal unless the men were working. The defendant Charles Carr and his mother contradict the plaintiff in some important particulars, but on the main fact as to the reception of the money by plaintiff the circumstances narrated by them support the version of plaintiff, who says the money was lying on the table. They say nothing about the robber rifling the pockets of plaintiff or taking the money from his hands. It was not scattered on the floor, and his conduct does not bear out the theory that he calmly replaced it on the table from which the thief ''scooped'' it with both hands. A constable came from Weaverville, and was met by the dogs barking loudly as he approached the Carr house. The Carrs displayed no anxiety for the apprehension of the robber and manifested no interest in the quest being made by the officer. The action of the robber in firing two shots was strange and unusual. Robbers usually resort to the use of firearms only when necessity compels such course. Noise invites attention, and this they do not crave. True, the shots scared the frightened plaintiff from the window, but this

3 Cal. App.—4

was possibly a mere coincidence. The appearance of the masked individual at the opportune moment was another strange coincidence, but, unfortunately for defendants, there is testimony to show that he appeared on the scene a trifle before the money had passed to the plaintiff. The officer followed the course pointed out as that taken by the robber, and found tracks leading down to the not distant river. There the tracks turned into a gulch leading up to the rear of the cow barn, and, by a third coincidence, the Chinaman saw Robbins coming from the direction of the barn when summoned by the bell. It would consume time and space to no purpose if analysis of the evidence was continued further. It is sufficient to say that there is evidence sufficient to sustain the verdict.

Nor could it serve any useful purpose to discuss the interesting and intricate questions presented in appellant's brief. The whole field of inquiry can be covered by the statement that the evidence objected to was a part of *res gestae*, and was admissible on the general issue of payment. We find no error in giving or receiving instructions.

The judgment and order are affirmed.

Chipman, P. J., and Buckles, J., concurred.